26462. STERLING DISCOUNT CORPORATION *v.* HOOKS
*et al.*

DECIDED OCTOBER 15, 1937.

*O. E. Bright, Perry Brannen,* for plaintiff in error.
*Maxwell Rosenthal, M. Warren Tennenbaum,* contra.

FELTON, J. This was a purchase-money attachment brought by the transferee of a retention-of-title contract against the makers. It was converted into a suit by service on and appearance by the defendants. The defendants sought to relieve themselves of liability by pleading and showing that they were induced to sign the contract by fraud of the payee and that the transferee took the paper with actual knowledge of the infirmity in the payee's title. The transferee contended that it received the paper in good faith and without the knowledge of the defective title. The jury rendered a verdict for the defendant, and found against the plaintiff transferee in the sum of $330 representing a down payment of $300 on the price of the goods, which was paid by the defendant to the payee of the contract, and $30 freight. The plaintiff excepted.

The evidence on the question of whether the plaintiff had knowledge of the alleged fraud was as follows: Mr. Smith, the brother-in-law of one of the defendants, testified, in substance, "I am a brother-in-law to Mrs. Hitchcock, the defendant. I went to Atlanta for her. I went to Felton Beauty Supply Company on September 11, 1936. I talked to Mr. Felton and told him what I came for. I knew the defendants bought some equipment from Felton. I went to Atlanta to act for Mrs. Hitchcock and found out up there who the discount agents of the Felton Beauty Supply Company were. I looked in the telephone directory and went over to see them on September 11, 1936. When I got there I asked for the manager. I was pointed out to the manager, and I asked him did he have any papers on this, and he said he did not. I told him the stuff was not satisfactory and was not what they bought, and that I wanted to get the paper. Sterling Discount Corporation denied that they had the paper. I also told these people about the fraud that had been perpetrated upon my sister-in-law, and clearly told them I was acting for her. I told them she had been tricked into signing the wrong contract, and the man at the Sterling Discount Corporation said he did not have a paper, and had no record of it at all. I looked in the telephone book to find out where the Sterling Discount Corporation was. I think it was in the Marietta Building. I can't tell what caused me to think that. I think there were two or three people in that office. There was a man and a woman in there. I

saw one man there, and I asked for the manager. I don't know hardly what sort of looking man he was, but he was just a middle-aged man, medium sized. I do not remember anything about the color of his hair. I can not describe the man I talked to at all, but I kind of think that if I should see him again I might know him. I don't know that I would either, because I was a little wrought up that day, and was not paying much attention. I went to Atlanta for the specific purpose of delivering this specific notice. I did not find out who he was, and did not ask who he was. The man I talked to I saw at Sterling Discount Corporation office. The man I saw resembled that man [Mr. O. E. Bright], but I don't know whether he is the one or not. About that man there, Mr. Norman Coolidge, I can't say right now. I don't recollect how many stories we went up, whether it was twelve or fifteen, or whether it was low to the ground. I think it was on the second or third floor, but I would not say positive what I did. I don't think it was on the fifteenth floor. I went to see 'Sterling.' It was 'Sterling Finance Company.' That is the company I looked for. I don't know whether I looked for Sterling Securities and Brokerage Company or not. I asked for Sterling Finance, and they said that was what it was. When I looked for the name in the telephone book, Sterling Finance Company is the name I looked for. I found the number and address under that name, and I went to them; but as to how many flights of stairs I went up to for their office, I could not tell you how many I went up. As to remembering accurately the name of that company, I could have been mistaken, but I don't think I was."

Norman Coolidge, president and treasurer of the Sterling Discount Corporation, testified, in substance: "I work in the office, and have a girl stenographer with me. There is no other person in the office. My office is on the fifteenth floor of the 1522 Marietta Street Building. No other people are in that building of that same name, but there is a firm on the seventh floor named Sterling Securities and Finance Corporation. I saw Mr. Smith on the stand a few minutes ago. I never saw him before. I did not have a conversation with him on September 11th, or at any other time. I could not tell you whether I was in the office on September 11th, 1936. At that time I was on my vacation. Usually I am in my office. No one attends to the business of the

Sterling Discount Corporation in my absence. I am the manager and president of the corporation. I bought these papers for the Sterling Discount Corporation on September 12, 1936. I had no notice of any claim which might be made by these defendants with reference to a machine. I heard Mr. Smith say he talked to the Sterling Finance Company. I have never heard of that company and do not know their place. I did not tell him I did not have the paper. I do not remember exactly how many people I interviewed on September 11th, or the day before. The reason I know positively I never saw Mr. Smith before is the fact that I never forget a face when it invites trouble. Twelve to fifteen people may come into my office a day but I don't interview that many. I wouldn't interview more than three or four probably. I think I could positively identify every man who has come into my office in the past two or three months if he came to argue about a $1300 debt. I suspect that this is the first complaint I have had of this kind in ten years."

The evidence of Mr. Smith is insufficient to establish the fact that he gave notice of the fraud claimed to Mr. Coolidge, the president and manager of the Sterling Discount Corporation. Even if it can be said to amount to circumstantial evidence, it must give way to the positive, uncontradicted, and unimpeached testimony of Mr. Coolidge that no such notice was given. Mr. Smith did not positively identify Mr. Coolidge, his company, nor the floor his office was on. There was simply nothing definite enough in Mr. Smith's testimony on which to base a finding which would be anything more than a conjecture. The evidence was not sufficient to authorize a finding that the Sterling Discount Corporation had notice of the alleged fraud, and it was error for the court to overrule the motion for new trial.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*